IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL INDICTMENT |
| | : | NO. 1:13-CR-394 |
| MICHAEL J. VARNELL | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

Defendant's timely objections [Doc. 39] to the Magistrate Judge's Final Report and Recommendation ("R&R") [Doc. 36] regarding Defendant's Motion to Suppress Statements are currently before the Court. The R&R recommends the denial of Defendant's Motion to Suppress Statements [Doc. 13].

Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a *de novo* basis and any non-objected portion on a "clearly erroneous" standard. Defendant objected to two of the findings in the Magistrate Judge's R&R. First, Defendant objected to the finding that statements made by the Homeland Security Investigations ("HSI") agents who questioned him "were accurate and not misleading" when they told Defendant he would not be arrested that day, that they were acting as "fact-finders," and that the United States Attorney's Office would decide whether to prosecute [Doc. 36 at 19]. Second, Defendant objected to the finding that "Defendant understood that

he was not required to speak to the agents" [Doc. 36 at 20].  Accordingly, the Court has reviewed the record in this case on a *de novo* basis, including among other items, the audio recording of the agents' interview with Defendant, photographs, and other exhibits introduced at the motion to suppress hearing before Magistrate Judge Linda Walker, and the transcript of that hearing.[1]

The Court has conducted a thorough, independent review of the evidence and the parties' respective arguments in connection with Defendant's Motion to Suppress.  Based upon this review, the Court finds the Magistrate Judge's findings and legal analysis are thorough and in all material respects correct, with the one modification noted herein.

Although the agents were not entirely forthcoming with Defendant,[2] they did not engage in the type of out-and-out deception found by the Eleventh Circuit to render a statement involuntary in *United States v. Lall*, 607 F.3d 1277 (11th Cir. 2010).[3]  The agents[4] told Defendant multiple times that neither he nor his mother or stepfather would be arrested that day, a true statement; in addition, they explained that they were gathering

---

[1] Magistrate Judge Walker conducted an evidentiary hearing on March 31, 2014.

[2] Defendant protests that the agents did not tell him he would likely be arrested on a later date and that most of the child pornography investigations in which they find evidence of its possession end in prosecutions.

[3] There, a detective elicited a full confession after telling the defendant he would not be arrested and that the information he gave "would not be used to prosecute him."  While the detective did not arrest the defendant himself, the statement was later used to help convict the defendant in a federal prosecution.

[4] As did the Magistrate Judge, the Court refers to the two interviewing HSI agents, David Westall and Jeff Robeson, simply as "agents," because it is not always clear in the audio recording of their conversation with Defendant which agent is speaking.

evidence and that a different entity would decide whether to prosecute Defendant. Taken as a whole, the agents' statements worked to assuage Defendant's fears of immediate arrest, but nonetheless conveyed that an investigation was ongoing and that a decision about whether Defendant would be charged with crimes had not yet been made.

It is true that the agents told Defendant that their focus was on determining whether the children depicted in child pornography were being held or harmed inside this or other target homes. Still, Defendant acknowledged that child pornography was illegal, referred to "illegal" and "under-aged" girls, and generally expressed an understanding that possession of child pornography was unlawful.

The Court next reviews Defendant's assertion that the Magistrate Judge erred in finding that Defendant understood he did not need to speak with the agents. A review of the agents' interview with Defendant gives the Court reason to pause in adopting the finding that "Defendant's statements [that he 'had to' talk to the agents] merely reflected his belief that cooperating with the agents could possibly benefit him" [Doc. 36 at 20]. Defendant first makes statements to the effect that he has to talk to the agents between 02:25 and 02:50 in the interview, then does so again at 03:08 and around 08:20. The agents do not mention cooperation, however, until 08:55. Before that point, their conversation with Defendant concerns whether he is the owner of the suspect email address and how he

3

located child pornography.  *See generally* Gov't's Ex. 10.  The course of the conversation persuades the Court that Defendant's statements do not simply express his view that cooperation may be helpful.

Although the effects of Defendant's extreme anxiety condition[5] on him if he were to leave his house could explain his belief that he had "no choice" but to talk to the agents, consideration of the interview as a whole dispels that as the primary or sole inference to be drawn from his statements.  Defendant told the agents that he had been diagnosed with "nausea-induced anxiety" that causes him to be nauseous and is the reason he is jobless.  Gov't's Ex. 10 at 01:35-01:40, 03:35-03:45.  Late in the interview, Defendant tells the agents that leaving his house makes him nauseous, causes him to "freak[] out," and makes him "violently sick." Gov't's Ex. 10 at 27:00-27:38.  Just after this, in the course of explaining that Defendant is not required to speak to the agents, the agents seem to recognize that Defendant's anxiety might be keeping him from exercising his right not to speak with them.  At 27:45-28:00, one of the agents explains that if Defendant's anxiety prevents him from leaving the house to

---

[5] The Court was troubled by Defendant's account of his psychological problems during the interview and other evidence of these problems.  In addition to his description of his anxiety condition, Defendant stutters throughout the interview and apparently dry heaves or vomits during it.  *See generally* Gov't's Ex. 10.  Defendant also tells the agents that he had gone "nutso" for seven years and "nuts" from "not having a job and this anxiety for seven years."  Gov't's Ex. 10 at 05:05-05:10, 06:12-06:20.  His bedroom walls appear to have been smashed and defaced, containing scrawled writing and multiple holes and dents.  Gov't's Ex. 5, 6, 8.  Defendant also has toys and nunchucks displayed in his room.  *Id.*  For this reason, the Court conferred with the parties' counsel regarding the Defendant's health status.  The Court is satisfied that this issue has been reviewed and handled properly.

4

end the interview, he could "go somewhere . . . ." The agent is then cut off by the Defendant making a statement that ends, "go back to bed, probably."[6] This suggests that Defendant was aware that he had a means of cutting off the interview that would not require him to leave his house and thereby suffer from debilitating anxiety; those means were "go[ing] back to bed."[7] This conclusion is bolstered by the fact that Defendant states again, four minutes later in the interview, that he had "no choice" but to talk to the agents that morning. Gov't's Ex. 10 at 31:45-31:53. That is, even after Defendant posited how he might end the interview without leaving his house—by going back to bed—he persisted in describing having "no choice," suggesting that that belief did not derive solely from fear of leaving his house but instead, from some other view he independently held regarding the necessity of speaking with the agents.

Whatever the reason for Defendant's statements that he had "no choice" but to speak with the agents, the interview was lacking in the level of coercion that is necessary to finding that a statement was involuntarily made. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is

---

[6] Defendant's full statement at this point is unclear from the audio recording, but "go back to bed, probably," is clear.

[7] While it may seem curious to suggest that Defendant could simply return to sleeping in his bedroom while two HSI agents occupied it with him, the agents made clear that they were presenting Defendant with an opportunity to cut off the questioning. During this exchange the agents asked Defendant, "Do you still want to talk to us?" and they explained his right to end the interview. Gov't Ex. 10 at 27:40-27:55.

5

not 'voluntary' . . . .")  The Court agrees with the Magistrate Judge's thorough analysis of how this interview differs from those that have been found to render statements involuntary.  Defendant was not threatened, attacked, or physically restrained, nor did the agents have their guns drawn at any point during the interview.  Defendant agreed to talk to the agents and chose the location of the interview, his bedroom, as the place where he would be most comfortable.  The recording of the interview lasts only thirty-five minutes.  Gov't's Ex. 10.  While the agents were somewhat evasive in responding to Defendant's questions about, for instance, whether he would go to jail, their tactics and statements to him did not rise to the level of the coercion that is necessary to a finding of involuntariness.  *See United States v. Thompson*, 422 F.3d 1285, 1295-96 (11th Cir. 2005) ("Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession.").

Accordingly, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [Doc. 36] as amended here and **DENIES** the Defendant's Motion to Suppress Statements [Doc. 13].

So **ORDERED** this 28th day of October, 2014.

_____
**Amy Totenberg**
**United States District Judge**